IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALBERT POON,

    Plaintiff,                       No. CIV S-07-1123 MCE KJM P

    vs.

DURFEY, et al.,

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner at California State Prison-Solano (CSP-Solano), proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. This action is proceeding currently against defendants Durfey, Cummins, Good and Singh, all current or former California Department of Corrections and Rehabilitation (CDCR) employees, for alleged violations of the Americans with Disabilities Act (ADA) and plaintiff's Eighth Amendment rights. Defendants' motion for summary judgment is before the court.

I. <u>Summary Judgment Standard</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 21, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

## II. Factual Background

In his June 12, 2007 complaint, signed under the penalty of perjury, plaintiff avers defendants violated his rights under the ADA when they disregarded the accommodation granted in 2004 in response to a CDC-1824 (Reasonable Modification or Accommodation Request) allowing him to walk a shorter than normal route to the dining hall. Compl. at 10, Ex. B. Additionally, plaintiff says defendants acted with deliberate indifference to his serious medical needs and caused pain with no penological justification in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Id. at 10.

Plaintiff also represents he was previously issued a CDC-1845 Inmate Disability Verification Form. In this form, dated December 2002, Dr. Obedoza verifies plaintiff has permanent mobility impairment and indicates he can walk one hundred yards and up a flight of stairs, without pause, with the aid of crutches or a cane. Compl., Ex. A. In December 2002, plaintiff was issued a cane to help him walk. Mem. P. & A. in Supp. Mot. Summ. J. (MSJ) at 2:17-21. Once the CDC-1845 was issued, plaintiff avers he had no problem walking the short route to the dining hall from his barracks, as opposed to the long route around the track. Compl. at 5:6-8. The short route is approximately 148 yards, while the long route is approximately 320 yards, as estimated by plaintiff and adopted by defendants. Defs.' Statement of Undisputed Facts No. 15 & Ex. J.

In early May 2004, Officer Fitzpatrick ordered plaintiff to take the long route to the dining hall. Compl. at 5:8-9. In response, plaintiff requested and was granted the accommodation reflected in the CDC-1824 referenced above, based on the medical determination in the CDC-1845. Specifically, plaintiff was given permission to walk the short route, effective May 20, 2004. Id. at 5:10-14 & Ex. B.

The CDC-1824 accommodation was honored until September 2006, when Sergeant Durfey ordered everyone to take the long route from the barracks to the dining hall. Id. at 5:15-18. Plaintiff did not confront Durfey personally, but was told to walk the long route by

Commanding Officer Martinez. Id. at 5:19-22. After plaintiff showed Martinez the CDC-1824 accommodation, Martinez said he could walk the short route. Id. at 5:22-24. One day later, Sergeant Good tried to stop plaintiff from walking the short route. Good let plaintiff continue after Martinez informed him of plaintiff's CDC-1824. Id. at 5:25-6:1.

Over the next several days, plaintiff was stopped from walking the short route, and turned back to walk the regular route, alternately by Durfey, Good or Martinez. When plaintiff tried to show Durfey the CDC-1824, he refused to look at it claiming, "I can't read!" Id. at 6:2-8.

In grieving the directive to take the long route, plaintiff submitted two appeals and wrote a letter to the warden. Id. at 6-7 & Ex. D. After he submitted his appeals, plaintiff alleges that Sergeant Cummins, who covered the second watch from 6 a.m. to 2 p.m., also made plaintiff walk the long route. After plaintiff showed Cummins the CDC-1824, plaintiff says Cummins responded, "We don't honor medical chronos. If they write anymore short route chronos, we're going to kick their ass!" Id. at 7:20-25.

In response to plaintiff's first level appeal, in addition to processing a portion of the appeal as a staff complaint, Associate Warden Singh wrote on February 14, 2006, that the "CDC-1845 reveals you are able to walk 100 yards, up a flight of stairs, without pause, with the aid of a cane. This should not preclude you from walking to the dining hall via the regular route." Id., Ex. D at 3, 8. There is no indication Singh consulted a medical doctor before responding to plaintiff's appeal. See Decl. of V. Singh.[1] In response to plaintiff's second-level

---

[1] Although defendants have provided a 2008 declaration from Dr. Traquina, Chief Medical Officer at CSP-Solano, the declaration does not eliminate factual questions so as to support a grant of summary judgment. For instance, Dr. Traquina says on the one hand that inmates classified in the same manner as plaintiff "can walk longer distances [than one hundred yards], with pauses," and that a required pause longer than a few minutes "would be documented in the CDC-1845." Decl. of A. Traquina ¶¶ 6-7. On the other hand, the doctor says a CDC-1824 "is customarily reviewed by medical staff and not by custody staff, and custody staff cannot render a medical opinion in a CDC-1824." Id. ¶ 9. A reasonable jury thus could conclude that plaintiff's authorization to walk the short route is a medial authorization.

appeal, in which plaintiff claimed his medical condition was deteriorating and that he was unsatisfied with the response to his first level appeal, id. at 8:16-18 & Ex. D at 3,[2] Warden Sisto stated that an inquiry into plaintiff's staff complaint had been conducted but that plaintiff was not privy to the results of the investigation, which was a private personnel matter. Id., Ex. D at 6-7. Sisto encouraged plaintiff in this memorandum to submit another CDC-1824 "if you feel staff continues to discriminate against you because of your disability concerns." Id. (emphasis in original).

On January 12, 2007, in response to a letter plaintiff sent to the warden, Chief Deputy Warden Stiles noted that Durfey and Good each had authored a CDC-128-B chrono indicating that plaintiff was observed walking outside of his building without his cane, and concluding that plaintiff's "possession of this cane should be deemed a manipulation of staff." Stiles advised plaintiff that the use of a cane is based solely on physical limitations determined by medical staff and that it is plaintiff's responsibility to use the cane appropriately. Stiles also counseled plaintiff that he had the right to appeal the placement of the chronos in his file. Compl., Attach. 3.[3]

III. Defendants' Arguments And Analysis

    A. Americans with Disabilities Act

Title II of the Americans with Disabilities Act (ADA) prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). ADA's Title II covers inmates in state prison. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

---

[2] Plaintiff also alleges "he had to forgo chow on many occasions because the pain for him to walk all that long distance is just too excruciating . . . they [the prison] did nothing to stop this unnecessary and wanton infliction of pain." Compl. at 8:18-21.

[3] The complaint has multiple exhibits and attachments, not all of which are labeled clearly. Attachment 3 is the last attachment to the complaint.

To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Weinreich, 114 F.3d at 978.

In support of their motion for summary judgment, Durfey and Good effectively challenge plaintiff's ability to satisfy the first and third elements above. They each represent they have "never given an inmate an order that was contrary to a medical doctor's order or medical chrono." Decl. of R. Durfey ¶ 3; Decl. of T. Good ¶ 3. As noted, however, plaintiff avers that Durfey, Cummins and Good, on multiple occasions, disregarded plaintiff's CDC-1824 allowing him to walk the short route based on his disability. Compl. at 5:15-18, 6:2-8, 7:20-25. The CDC-1824 was issued, as stated on its face, based on a review of plaintiff's files "revealing he is permanently mobility impaired." Compl., Ex. B at 2 (Disposition Section). The designation of "permanently mobility impaired" corresponds to the determination made by Dr. Obedoza in the CDC-1845 dated December 2002. Id., Ex. A. Thus, at least two questions warrant submission to a jury: whether defendants disregarded plaintiff's CDC-1824, and whether the CDC-1824 is equivalent to a medical chrono that cannot be overridden by correctional officers without consulting a medical expert. Defendants are not entitled to judgment as a matter of law.

Defendants also argue that, as individuals, they do not qualify as a "public entity" as defined in 42 U.S.C. § 12131(1)(A)-(B). Id. at 4-5. Defendants cannot be sued in their individual capacities under the ADA. Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 (8th Cir. 1999). However, plaintiff has sued defendants in their individual and official capacities, Compl. at 3:10-11, and thus may proceed against defendants in their official capacities. Miranda B. v. Kitzhaber, 328 F.3d 1181, 1188 n.7 (9th Cir. 2003).

B. Eighth Amendment

The Eighth Amendment requires that prison officials avoid actions "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment claim based on inadequate medical care has two elements, "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104).

Deliberate indifference to a medical need is shown when a prison official knows that an inmate has a serious medical need and disregards that need by failing to respond reasonably to it. See Farmer v. Brennan, 511 U.S. 825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Defendants argue that no dispute exists as to whether any defendants interfered with plaintiff's prescribed medical treatment or required him to do anything that exceeded the limitations indicated by his treating physicians. MSJ at 6:2-4. As noted, however, plaintiff avers that Durfey, Cummins and Good, on multiple occasions, disregarded plaintiff's CDC-1824 by not allowing him to walk the short route to the dining hall. In addition, plaintiff says Singh required plaintiff to walk the long route to the dining hall by denying his appeal, with knowledge of his CDC-1845 and in disregard of the CDC-1824. Compl. at 8:1-5 & Ex. D. As a general matter, without reference to plaintiff's CDC-1824 in particular, Dr. Traquina has suggested a CDC-1824 reflects a medical evaluation. On the record before the court, whether defendants interfered with plaintiff's prescribed medical treatment or required him to do anything that exceeded the limitations indicated by treating physicians is a genuine issue of material fact.

Defendants also argue that plaintiff admitted in his deposition he had no difficulty walking the long route to the dining hall with his cane. MSJ at 6:12. A fair reading of the deposition transcript discloses that plaintiff has not made any admission that would justify the court's depriving a jury of the need to resolve the matter. See Dep. of Albert Poon at 32:1-14, 38:7-41:23. Whether plaintiff has "no difficulty" walking the long route to the dining hall with his cane so as to relieve defendants of any Eighth Amendment liability is also a genuine issue of material fact.

Defendants' position, that the CDC-1824 was "not based on medical necessity and has no bearing on whether defendants were deliberately indifferent or failed to reasonably accommodate" plaintiff, MSJ at 6:19-21, also is not established conclusively so as to support a grant of summary judgment.

The court will recommend that defendants' motion with respect to plaintiff's Eighth Amendment claim be denied.

C. Qualified Immunity

Government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity thus serves to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In ruling on a qualified immunity defense, a court considers two questions. One, taken in the light most favorable to the party asserting the injury, is whether the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001).[4] If this question is entertained, a negative answer ends the analysis, with qualified

---

[4] The Supreme Court recently has receded from Saucier in providing that the two-step procedure it mandated there should not be regarded as an inflexible requirement. Rather, courts

immunity protecting defendant from liability.  Id.  A second question the court considers is "whether the right was clearly established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.  The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

Defendants do not argue that any aspect of the law underlying petitioner's Eighth Amendment claims was not clearly established at the times plaintiff alleges defendants violated his Eighth Amendment rights.  Defendants qualified immunity argument also should be rejected.

IV. Conclusion

In light of the foregoing, the court will recommend that defendants' motion for summary judgment be denied and that defendants be ordered to file their pretrial statement.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (#20) be denied;

2. Defendants be ordered to file their pretrial statement within twenty days of any order adopting the foregoing findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

/////

/////

/////

---

may exercise discretion in determining which of Saucier's two prongs to address first in light of the circumstances of a particular case.  A court may proceed to the second prong and address only that prong if it is dispositive.  See Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009).  In these findings and recommendations, the court has exercised its discretion and addressed the prongs in the order set forth above.

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2009.

_____
U.S. MAGISTRATE JUDGE

3
poon1123.57